# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | } | |
| SHARON S. HEINZ | } | CASE NO.  12-83138-JAC-7 |
| SSN:   XXX-XX-3220 | } | |
| | } | CHAPTER  7 |
| Debtor(s). | } | |
| | | |
| NICK LIOCE | } | AP NO.  13-80024-JAC-7 |
| BONNIE LORRAINE LIOCE | } | |
| Plaintiff(s), | } | |
| v. | } | |
| | } | |
| SHARON S.  HEINZ | } | |
| Defendant(s). | } | |

## AMENDED MEMORANDUM OPINION

This case is before the Court on a complaint to determine dischargeability pursuant to 11 U.S.C. § 523(a)(2)(A) and objection discharge pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(4)(A). At the conclusion of the trial in this matter held on September 16, 2013, the Court invited counsel to submit post-trial briefs regarding issues of relevant state agency law, destruction of documents, and spoilation of evidence.  The issues having been fully briefed, the Court finds upon due consideration of the pleadings, testimony and evidence presented at trial, that plaintiffs' claim in the amount of $39,296.26 is nondischargeable pursuant to § 523(a)(2)(A), and that the debtor's discharge is due to be denied pursuant to §§  727(a)(3) and (a)(4)(A).

## I.    FINDINGS OF FACT

### A.    Prepetition

1.    Heinz operates a business known as Signature Landscapes.  In December of 2010, the debtor hired Justin Taylor ("Taylor") as the general manager of Signature Landscapes to handle the

day-to-day operations of the company. Heinz testified that she described the list of services offered by Signature Landscapes to Taylor when she hired him. Thereafter, the debtor oversaw Taylor for approximately one month before turning the day-to-day operations of the business over to Taylor at which point Heniz testified that she began coming into the office a couple of hours a days, twice a week. Heinz gave Taylor the power and authority to contract on behalf of Signature Landscapes.

2.    In January of 2011, the plaintiff, Bonnie Lioce, contacted Signature Landscapes to request a quote to construct a covered porch and an outdoor fireplace at her residence. Lioce search the internet for qualified companies and contacted Signature Landscapes after reviewing their website which included the following statement: "For your protection we are licensed, bonded, and insured."[1] The website advertised services including landscape design, landscape installation, outdoor living, hardscape installation, deck and arbors, drainage solutions, foundation and structural renovation, landscape lighting, water features, irrigation, and maintenance.[2]

3.    Lioce called several companies to request quotes. When she called Southern Landscapes, Lioce testified that she first spoke with Heinz's assistant, Cheri Temintel. According to Lioce, Heinz returned the call and informed her that she would send Taylor to Lioce's residence to give the Lioces an estimate. Lioce testified that Heinz gave her Taylor's credentials during the phone call. At trial, Heinz denied speaking with Lioce by telephone before Taylor quoted the project.

---

[1]      Plaintiffs' Ex. 23.

[2]      Plaintiffs' Ex. 23.

2

4. After meeting with Taylor, Lioce signed a contract with Signature Landscapes dated January 6, 2011 for $26,764 for the construction of a "covered structure attached to the roof line on three sides." [3] Lioce testified that Taylor assured her that Signature Landscapes would be able to obtain the required permits to build the structure and that he had experience building the type of structure Lioce wanted.

5. Lioce testified that she relied upon the statements made on Signature Landscapes' web page — that the company was "licensed, bonded and insured" — which gave her peace of mind. She further testified that she relied upon Taylor's statements and assurances that Signature Landscapes could handle the job and obtain the required permits. Lioce testified that she would not have hired Signature Landscapes had she known that Signature Landscapes was not insured and could not obtain the required building permits. She was specifically concerned about the foundation work and attaching the covered porch to her home.

6. Lioce paid Signature Landscapes $8,900 on January 7, 2011 at the beginning of the project, and then another $7,200 on February 15, 2011.

7. Signature Landscapes did not complete the job. A few weeks after Signature Landscapes began construction, Heinz testified that she went to inspect the project after she saw large receipts coming in from the job. Heinz testified that Taylor exceeded his authority when he entered into the contract with Lioce because neither she nor anyone working for Signature Landscapes is a general contractor licensed to do the type of work required on the Lioce project. Without a general contractor's license, Signature Landscapes could not procure the required building permits to construct the attached covered porch. Heinz fired Taylor

---

[3] Plaintiffs' Ex. 22B.

approximately one week later and attempted to get the permits required to complete the job but was unable to do so. Heinz testified that the porch roof was structurally unsound.

8. Not only was Signature Landscapes not licensed to construct the structure attached to the Lioces' home, it was also not insured on the date Signature Landscapes contracted to construct the covered porch and fireplace. Heinz testified that she did have general liability insurance and was licensed to install landscaping when she created the website for Signature Landscapes, however, her insurance lapsed before Signature Landscapes contracted to build the Lioces' covered porch and outdoor fireplace.

9. The Lioces had the structure torn down because licensed contractors would not complete the job as it was left by Signature Landscapes.

10. On May 13, 2011, counsel for the Lioces sent Heinz a letter terminating the contract. On May 28, 2012, the Circuit Court of Madison County, Alabama entered a judgment against Heinz and Signature Landscapes in favor of the Lioces in the amount of $39,296.26 for breach of contract.

11. Heinz is a sophisticated business woman. She obtained a degree in accounting from the University of Alabama in 1989. In addition to owning Signature Landscapes, Heinz testified that she took steps at some point in 2012 to open an accounting practice, but never had any clients. Nevertheless, Heinz created a web page under the name Sharon S. Heinz, PA, holding herself out as a public accountant even though she is not licensed as a public accountant. She also created a Facebook page and a LinkedIn account offering accounting services. Her LinkedIn account states that she is an entrepreneur, public accountant, and QuickBooks advisor. Heinz stated on her LinkedIn account that she has "over 21 years

4

experience in Accounting and running a small business;" and further states that she specializes in "[s]mall business accounting," and "Quickbooks set up, coaching, and support."[4] Debtor listed previous business experience as the owner of Universal Auto from 1995 to 2002, and as an accountant at Mark Holman, CPA from 1990 to 2002.

**B.      The Petition**

12.      On September 27, 2012, the sheriff's office went to Signature Landscapes to execute on the Lioces' judgment.   The following day on  September 28, 2012, Sharon Heinz, d/b/a Signature Landscapes, filed a Chapter 13 petition.   This is not the debtor's first bankruptcy petition.   Including the current case, the debtor has filed five bankruptcy petitions under various names.  Previous filings include: case no.  89-15142-JSS-7 [Sharon Harris - Chapter 7 discharge]; case no.  00-80951-JAC-11 [Sharon Heinz d/b/a Universal Auto - confirmed Chapter 11]; 03-84983-JAC-7 [Sharon Strickland - Chapter 7 discharge]; and 09-81939-JAC-13 [Sharon Heinz d/b/a Signature Landscapes - dismissed for failure to make payments].

13.      On October 12, 2012, the debtor filed her Chapter 13 Schedules and Statement of Financial Affairs ("SOFA").  There are numerous inaccuracies and misstatements contained in these documents:

•        On Schedule B - Personal Property, Heinz listed a Compass Bank checking account with a value of $150, and a PNC checking account valued at $1,100.  Heinz actually had three checking accounts; two accounts at Compass Bank and one at PNC.  On

---

[4]        Plaintiffs' Ex.  18.

5

the petition date, the account balances totaled approximately $4,787.74. Heinz explained the discrepancy stating that the bank statement balances did not reflect checks she had written or transactions that had not yet cleared the accounts.

- On the SOFA, question 1 - Income from employment or operation of business, Heinz reported gross income of $12,980 for 2012; $17,300 for 2011; and $11,443 for 2010. The debtor's tax returns tell a different story. Heinz reported gross business income on her tax returns of $498,003 for 2012; $231,031 for 2011; and $254,575 for 2010. At trial, Heinz testified that she interpreted question 1 to mean income to her as opposed to gross amount from operation of a business despite the fact that the question clearly reads "income from employment or operation of business."

- Heinz responded none to question 3 in the SOFA which requires debtors to list all payments made within one year immediately preceding the commencement of the case to insiders. However, Heinz made payments to her son Joshua Harris totaling $23,573 as an employee of Signature Landscapes. She also failed to disclose payments made to her husband, Sam Whiteside, in the amount of $335 per month during the one year period preceding the petition date. The debtor listed Sam Whiteside as a secured creditor on Schedule D - Creditors Holding Secured Claims. Whiteside is secured by the debtor's 2004 BMW 530i. Whiteside is not disclosed as the debtor's husband anywhere in the petition.

- Heinz failed to list business income received from the rental of U-Haul trucks. Heinz testified that the income is nominal, less than three hundred dollars a month.

6

- On Schedule I - Current Income of Individual Debtor(s), in response to question 7, Heinz listed $1,299 as her regular monthly income from the operation of business. Heinz completed a Business Income and Expenses statement as required in support of this calculation. Heinz did not utilize her gross business income for the 12 months prior to filing as instructed in Part A of the worksheet. On the line requesting "gross income for the 12 months prior to filing," Heinz listed $74,410 when in fact Heinz reported gross business income on her 2012 tax return in the amount of $498,003. Heinz testified that she derived the $74,410 figure from a six month period in 2011. However, even using 2011 information, Heinz under reported her gross business income by several thousand dollars given that Heinz reported gross business income of $231,000 for the 2011 tax year. When questioned at trial as to why she used financial information from a six month period in 2011, Heinz stated that she would have only had information for ten months during 2012 as opposed to the requested 12 month period. Debtor could not explain why she chose to use a six month period in 2011 when 2012 records were available.

- On October 23, 2012, Heinz filed a notice of voluntary conversion from Chapter 13 to Chapter 7. On the conversion date, the ledger balance on Heinz's PNC checking account was approximately $18,486. Heinz did not amend her schedules to reflect this balance.

- Heinz failed to disclose her home address on the petition. Instead, she used the business address for Signature Landscapes.

## C. Loss of Records

14.    The debtor maintains her accounting books on electronic software called QuickBooks. This is the same software that the debtor offered to provide "setup, coaching and support" for on her LinkedIn account.

15.    Postpetition in late October of 2012, Heinz hired Leann Perry to reinstall the hard drive on one of two her office computers after the older computer crashed. The older computer contained the debtor's 2009 through 2011 QuickBooks information, as well as W2 and 1099 information. Heinz testified that she backed up her office computers approximately once a month using a thumb drive. Heinz explained that the QuickBooks version on the old computer was for 2008. Heinz testified that she could not retrieve the 2009 through 2011 information from the thumb drive using the newer version of QuickBooks. Prior to trial, Heinz failed to disclose during discovery the fact that the electronic information was available on a thumb drive.

16.    Plaintiffs' requests for production required Heinz to "produce copies of all books of account and records for the past three years of any business in which you have an ownership interest."[5] Heinz responded:

> Bank Records for 2012 complete have been produced. QuickBooks Profit & Loss statement has been produced. I can run any 2012 report from QuickBooks that may be needed as it pertains to my business. A computer crash caused me to lose my 2010 and 2011 QuickBooks records, although all the backup receipts and written records are available if needed in boxes. These are too voluminous to copy but will be made available upon request. The 2010 and 2011 tax returns have been produced.

Heinz did not produce the thumb drive, nor even disclose its existence in response to the plaintiffs' requests for production until the date of trial.

---

[5]    Plaintiffs' Ex. 1.

8

17.     Subsequently, the paper backup documentation for the destroyed electronic information was lost or destroyed in November of 2012 when Heinz relocated her office.  Heinz testified that two or three boxes of records were missing after the move.  Ironically, the boxes that were lost contained the backup information for the 2009 through 2011 electronic records which had just been destroyed.

**D.      Procedural History**

18.     On October 1, 2012, Heinz filed a motion to extend the automatic stay pursuant to § 362(c)(3)(B).  The motion was necessitated because the debtor had a prior Chapter 13 case, case no. 09-81936-JAC-13, pending within the preceding 1-year period which had been dismissed for failure to make payments.

19.     On October 15, 2012, the Court entered an order denying the motion  after counsel for the Lioces appeared at the hearing and objected to the extension.

20.     On October 23, 2012, Heinz filed a notice of voluntary conversion to Chapter 7.  On October 27, 2012, Heinz filed a second motion to extend the automatic stay.  On October 29, 2012, the Court entered an order denying on the grounds that the conversion from Chapter 13 to Chapter 7 did not change the petition filing date for purposes of the debtor's § 362 motion to extend stay.

21.     On November 14, 2012, Heinz filed an adversary proceeding against Nick and Bonnie Lioce and their attorney alleging same violated the stay by failing to release levies and executions in the Circuit Court of Madison County, Alabama.

Case 13-80024-JAC    Doc 43    Filed 11/13/13    Entered 11/13/13 15:02:07    Desc Main
Document      Page 9 of 33

22. On November 27, 2012, the Lioces filed an emergency motion to abandon property used in the debtor's business in which the debtor did not claim a personal exemption. On January 16, 2013, the Court entered an order granting the motion to abandon.

23. On January 24, 2013, the Lioces filed a motion to extend the deadline for filing a §§ 523 and 727 complaint. The deadline ran through January 29, 2013. On January 28, 2013, the Court entered an order granting the motion and extending the deadline for a period of 60 days.

24. On March 29, 2013, the Lioces timely filed the above styled complaint.

## II.     CONCLUSIONS OF LAW

### A.     Amended and Supplemental Pleadings

As a preliminary matter, the Court must address an issue raised in the debtor's post-trial brief. Heinz argues that the Court should not consider issues of fraud based on any misrepresentations made by the debtor's agent because same were not alleged in the plaintiffs' complaint in violation of Rule 7009(b) which requires allegations of fraud to be stated with particularity. Pursuant to Bankruptcy Rule 7015 and FED. R. CIV. P. 15(b) issues not raised in pleadings may be treated as if they were properly raised when they were tried by express or implied consent of the parties. Rule 15(b) reads as follows:

> (b) For Issues Tried by Consent. When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Although the plaintiffs did not allege in their complaint that any of the oral misrepresentations upon which they relied were made by Heinz's agent rather than the debtor

Case 13-80024-JAC    Doc 43    Filed 11/13/13    Entered 11/13/13 15:02:07    Desc Main
Document      Page 10 of 33

herself, the plaintiffs did assert these allegations in plaintiffs' brief filed in support of their motion for summary judgment filed on June 14, 2013 more than three months prior to the trial date.[6] During the hearing held on the parties' cross-motions for summary judgment held on July 8, 2013, the issue of whether or not misrepresentations were made by the debtor's agent, and whether the debtor could be held liable for same under § 523(a)(2)(A) was raised and discussed at length.  In plaintiffs' proposed Issues to Be Tried, Proposed Findings of Fact and Conclusions of Law filed on September 11, 2013, the plaintiffs clearly asserted that "[u]pon meeting with Heinz's agent, the Lioces were assured that the scope of the project was within the capabilities of Signature Landscapes."[7]  Further the issue of agency was addressed at length during the trial of this matter on September 16, 2013 and no objection was raised to the evidence at trial.  Thus, the Court finds that the debtor has known about the evidence for at least four months prior to the trial date, made no objection, and was not prejudiced in her ability to confront the evidence presented at trial, and further raised no objections to same during trial.[8]

## B.  Adverse Inference

At the close of trial, the Court stated on the record that it was drawing an adverse inference against Heinz based on debtor's failure to produce the thumb drive in response to plaintiffs' Requests for Production of Documents.   Spoliation of evidence is "'defined as the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence

---

[6]  ECF No.  22.

[7]  ECF No.  33.

[8]  *See Steger v.  General Elec.  Co.*, 318 F.3d 1066 (11th Cir.  2003)(issues raised and discussed at length at pretrial were tried by express or implied consent of parties).

11

in pending or reasonably foreseeable litigation.'"[9] The movant has the burden of demonstrating by a preponderance of the evidence that a litigant failed to preserve evidence or destroyed it.[10] Specifically, the spoliation of electronic evidence that is germane to the proof of issue at trial may support an inference that the destroyed evidence would have been unfavorable to the party destroying same.[11] *See* FED. R. CIV. P. 26(f) requiring planning meeting "to discuss any issues relating to preserving discoverable information," and to address "any issues relating to disclosure or discovery of electronically stored information." *See also* FED. R. CIV. P. 34 making electronically stored information "in any medium from which information from which information can be obtained," subject to production.

A party asserting a claim for spoliation of electronic evidence must show that: (1) the other party had an obligation to preserve the electronic evidence when it was destroyed; (2) that same was destroyed with culpable state of mind, including ordinary negligence, gross negligence, recklessness, willfulness, or intentional conduct; and (3) that the destroyed evidence was relevant and favorable to the party's claim, such that a reasonable trier of fact could find that it would support a party's claim.[12] A litigant has a duty to preserve evidence that she knows or should know is relevant to imminent or ongoing litigation.[13]

---

[9]    *United States v. Krause (In re Krause)*, 367 B.R. 740, 764 (Bankr. Kan. 2007).

[10]    *Id.*

[11]    *Id.*

[12]    *Id.*

[13]    *Id.*

In this case, the Court finds that Heinz knew or should have known that the thumb drive containing documentation from 2009 through 2011 was relevant to ongoing litigation. The missing documents include the time frame in 2011 when Taylor was employed as Heniz's agent and during which Signature Landscapes contracted to build the Lioce project.   In May of 2012, the Lioces obtained a judgment against Heinz for work performed by Signature Landscapes in 2011.   In September of 2012, the sheriff's office went to Signature Landscapes to execute on the judgment and Heinz filed for bankruptcy relief the following day.  On October 15, 2012, the Court entered an order denying Heinz's motion to extend the stay based upon the Lioces' objection to same.  It was immediately thereafter that the electronic information for the relevant time period was lost or destroyed on the debtor's computer and then the backup paper documentation was subsequently lost or destroyed.  Yet, the thumb drive remains.  However, Heinz failed to produce the thumb drive in response to plaintiffs' requests for production of documents and, in fact, the plaintiffs did not even know same existed until Heinz testified at trial regarding same.   The Court is mindful that the debtor is a sophisticated businesswoman who has held herself out as an accountant, and as someone who offers coaching and support in QuickBooks setup.

The Court finds that the evidence compels a conclusion that the debtor's spoilation of electronic evidence, the failure to preserve both electronically stored information as well as the backup paper documentation, and failure to produce the thumb drive was willful and intentional given the timing during imminent or ongoing litigation with the Lioces.  While the Court will not impose a specific sanction against the debtor in this instance such as default judgment, the Court finds that the spoliation entitles the Lioces' to an adverse inference in this case to the extent same impacts the debtor's overall credibility.

13

## C. Agency Relationship

"The standard for determining whether an agency relationship exists is whether the purported principal has control over the alleged agent. In order for an agency relationship to exist, there must be some affirmative evidence that the principal has the right to control the agent."[14] The parties' relationship must be analyzed under relevant state law.[15] Specifically, in Alabama, the "test for agency is whether the alleged principal has retained a right of control over the actions of the alleged agent."[16] "[A]n agency relationship is determined by the facts of the case and not how the particular parties characterize their relationship."[17] "The party asserting the existence of an agency has the burden of presenting sufficient evidence to prove the existence of that relationship."[18]

The Court finds the plaintiffs have presented substantial evidence that Taylor was in fact Heinz's agent as the debtor hired Taylor to run the day-to-day operations of Signature Landscapes. Heinz empowered Taylor to sign contracts on behalf of Signature Landscapes. Further, Lioce testified that she spoke with Heinz on the telephone to request a quote and the debtor informed Lioce that she would send Taylor to the Lioces' residence to bid on their project. Accordingly, the Court finds that Heinz exercised control over Taylor and cloaked him with authority to contract on her behalf, thus, Taylor was the debtor's agent for purposes of § 523(a)(2)(A).

_____

[14]  *Belmont Wine Exchange, LLC v. Nascarella (In re Nascarella)*, 492 B.R. 327 (Bankr. M.D. Fla. 2013).

[15]  *Carroll v. Quinlivan (In re Quinlivan)*, 434 F.3d 314, 319 (5th Cir. 2005).

[16]  *Dickinson v. City of Huntsville*, 822 So.2d 411, 416 (Ala. 2001); Wood *v. Shell Oil Co.*, 495 So.2d 1034, 1036 (Ala. 1986); *Jackson v. Searcy*, 628 S.2d 887, 889 (Ala. Civ. App. 1993)("for an agency relationship to exist, there must be a right of control by the principal over the agent").

[17]  *Coob v. Union Camp Corp.*, 786 So.2d 501 (Ala. Civ. App. 2000), *revd on other grounds*, 816 So.2d 1039 (Ala. 2000).

[18]  *Dickinson v. City of Huntsville*, 822 So.2d 411, 416 (Ala. 2001).

Case 13-80024-JAC   Doc 43   Filed 11/13/13   Entered 11/13/13 15:02:07   Desc Main
Document      Page 14 of 33

**D. § 523(a)(2)(A)**

The plaintiffs assert that the debt owed them under the judgment entered against Heinz is nondischargeable as a debt for money that was obtained by false pretenses, a false representation, or actual fraud within the meaning of § 523(a)(2)(A) which reads as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
>
> ****
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

Specifically, the plaintiffs contend that through false advertisements, Heinz solicited the Lioce project. Those advertisements put forth prominently that Signature Landscapes was "licensed, bonded, and insured," when in fact Signature Landscapes was neither insured nor licensed to perform the work for which the company bid.[19] That upon meeting with Heinz's agent the Lioces were assured that the scope of the project was within the capabilities of Signature Landscapes and that Signature Landscapes would be able to obtain the permits required to build the structure. However, by the debtor's own testimony the project required building permits and, thus, a general contractor's license which Signature Landscapes lacked making it impossible for Heinz to obtain the requisite permits. Nor was Signature Landscapes insured as advertized on Signature Landscapes' website during the Lioce project.

---

[19] The parties agreed at trial that the issue of bonding was not relevant to the Lioce project.

15

Section 523(a)(2)(A) has generally been interpreted to require the traditional elements of common law fraud.[20]  "To prove that a debt is nondischargeable under § 523(a)(2)(A), a creditor must show that '(1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation.'"[21]  Plaintiffs have the burden of proving each element of this § 523 action by a preponderance of the evidence.[22]

### i. False representation made with intent to deceive.

The Eleventh Circuit has recognized that a debt may be excepted from discharge either when the debtor personally commits actual fraud or when such actual fraud is imputed to the debtor under agency principles.[23]  In *Hoffend v. Villa (In re Villa)*, 261 F.3d 1148 (11th Cir.  2001), the issue before the Eleventh Circuit was whether the alleged fraud of the debtor's employee, for which the debtor could be held liable as a controlling person under § 20(a) of the Securities Exchange Act, should be imputed to the debtor so as to render the creditor's claim nondischargeable pursuant to § 523(a)(2)(A).   Although the Eleventh Circuit held that the employee's alleged securities fraud could not be imputed for purposes of § 523(a)(2)(A) to the debtor under the "control person" provisions of the securities law, the Eleventh Circuit recognized that the Supreme Court has held that actual fraud may be imputed to a debtor under agency principles.

---

[20]     *Taylor v.  Wood (In re Wood)*, 245 Fed.  Appx.  916, *1 (11th Cir.  2007).

[21]     *Sears v.  United States*, 2013 WL 4426516, *3 (11th Cir.  2013).

[22]     *Grogan v.  Garner*, 498 U.S. 279 (1991).

[23]     *Hoffend v.  Villa (In re Villa)*, 261 F.3d 1148, 1151 (11th Cir.  2001).

16

In *Villa,* the Eleventh Circuit initially recognized the Supreme Court's ruling in *Neal v. Clark,* 95 U.S. 704 (1877) in which the Court held that a debt will not fall within § 523(a)(2)(A) unless the debtor committed positive, actual fraud. Then the *Villa* court noted that the Supreme Court subsequently ruled in *Strang v. Bradner*, 114 U.S. 555 (1885) that *Neal's* positive fraud requirement can be satisfied by the fraud of an innocent debtor's partner. The Eleventh Circuit wrote:

> [Creditor] relies upon *Strang v. Bradner,* 114 U.S. 555, 5 S.Ct. 1038, 29 L.Ed. 248 (1885). There, the Supreme Court addressed the issue of whether two bankrupt debtors, who were vicariously liable under agency law for a debt incurred through the fraud of their co-partner, were precluded from discharging that debt in bankruptcy. *See id.* at 561, 5 S.Ct. at 1041. *Strang* distinguished the holding of *Neal,* where the Court had interpreted fraud to mean actual or positive fraud rather than implied fraud. *See Strang,* 114 U.S. at 559, 5 S.Ct. at 1040 (citing *Neal,* 95 U.S. at 709, 24 L.Ed. 586). *Strang* held that *Neal* 's positive fraud requirement was satisfied by the fraud of the debtors' co-partner. The question before the Court in *Strang* was whether the debtors, who had been unaware of their co-partner's fraud, could nonetheless be precluded from discharging the debt in bankruptcy. *See Strang,* 114 U.S. at 559, 561, 5 S.Ct. at 1040-41. The Court held that the co-partner's fraud, imputed to the debtors, precluded their discharge of the debt. *See id.* at 561, 5 S.Ct. at 1041. [Creditor] argues that the holding of *Strang* should extend to preclude Villa's discharge of a claim based on his employees' fraud, for which Villa may be responsible under § 20(a).[24]

In *Villa,* the creditor argued that the holding of *Strang*, imputing actual fraud to an innocent partner so as to render the debt nondischargeable, should be extended to situations in which the debtor is liable for the actual fraud of an employee, not under partnership or agency principles, but as a controlling person under the Securities Exchange Act. Instead, the Eleventh Circuit read *Strang* narrowly as only imputing liability for fraud in bankruptcy based on the common law of partnership and agency. The Eleventh Circuit stated that in reaching this conclusion, it was mindful

---

[24]     *Hoffend v. Villa (In re Villa)*, 261 F.3d 1148, 1151 (11th Cir. 2001).

of its obligation to construe strictly exceptions to discharge in order to give effect to the fresh start policy of the Bankruptcy Code.[25]

Since the Supreme Court's holding in *Strang*, "the majority of courts to address the issue in a commercial or business context have held that an innocent debtor's liability for her agent's wrongdoing is nondischargeable under § 523(a)(2) regardless of the debtor's knowledge or participation."[26]  In *Carroll v. Quinlivan (In re Quinlivan)*, the Fifth Circuit described the balance between the Bankruptcy Code's fresh start policy and the underlying purpose of § 523(a)(2)(A) which is to protect victims of fraud.  The Fifth Circuit wrote:

> Holding the debtor accountable for his partner's fraud "effectuates important state law policies regarding imputed liability."  These state law policies create incentives for the debtor to control or monitor the conduct of his agent or partner.  As a result, when determining whether the exception applies, the culpability of the indebted partner is irrelevant.   Even if the partner is innocent of wrongdoing and had no knowledge or reason to know of the fraud, the debt is not dischargeable under § 523(a)(2)(A). . . . Of course, the debt in question must be one for which the debtor is liable to the creditor under applicable nonbankruptcy law.[27]

Other "courts have adopted a reckless standard, requiring that the debtor knew or should have known of the agent's fraud in order to impute intent."[28]  Heinz cites this line cases to argue that she should not be held liable for her agent's actions.  Most of the cases cited by the debtor arose in

---

[25]     *Id.* at 1152.

[26]     *Agribank v. Gordon (In re Gordon)*, 293 B.R. 817, 822 (Bankr. M.D. Ga. 2003); *Carroll v. Quinlivan (In re Quinlivan)*, 434 F.3d 314 (5th Cir. 2005)(explaining that the culpability of the indebted partner is irrelevant; even if the debtor is innocent of wrongdoing and had no knowledge or reason to know of the fraud, the debt is nondischargeable).

[27]     *Carroll v. Quinlivan (In re Quinlivan)*, 434 F.3d 314, 319 (5th Cir. 2005)(citations omitted).

[28]     *In re Gordon*, 293 B.R. at 822; *Treadwell v. Glenstone Lodge (In re Treadwell)*, 637 F.3d 855 (8th Cir. 2011)(explaining that imputation is proper only if the otherwise innocent debtor knew or should have known of his partner's fraud).

Case 13-80024-JAC    Doc 43    Filed 11/13/13    Entered 11/13/13 15:02:07    Desc Main
Document      Page 18 of 33

the context of a marital relationship. *See Treadwell v. Glenstone Lodge (In re Treadwell)*, 637 F.3d 855 (8th Cir. 2011)(remanding case for determination of whether married debtors were partners in travel agency); *Connecticut Attorneys Title Ins. Co. v. Budnick (In re Budnick)*, 469 B.R. 158 (Bank. D. Conn. 2012)(finding debtor and his former wife did not have a partnership with respect to skating ring facility); *Automotive Fin. Corp. v. Vasile (In re Vasile)*, 297 B.R. 893 (Bankr. M.D. Fla. 2003)(finding any fraud on the part of debtor-husband in connection with his practice of floor-planning vehicles for a higher price than what he paid for them in order to cover repair costs would not be imputed to debtor-wife); *In re Savage*, 176 B.R. 614 (Bankr. M.D. Fla. 1994)(credit card debt incurred by debtor's wife through fraud did not come within discharge exception).

In the *Vasile* case, the bankruptcy court held that any fraud on the part of the debtor-husband in connection with his practice of floor-planning vehicles for a higher price than what he paid for them in order to cover repair costs would not be imputed to the debtor-wife. The bankruptcy court explained that fraudulent intent may not be imputed from one spouse to another simply based on the marital relationship of the parties.

The *Budnick* case involved a finding that the debtor and his former wife did not have a partnership relationship and that debtor's wife did not act within the scope of her authority as an accountant and bookkeeper for an LLC for which debtor was the managing member, in embezzling funds from another employer to pay the LLC's bills. Therefore, the debtor could not be held vicariously liable for debt arising from his wife's unknown embezzlements under agency theory where the wife kept the embezzlements a secret from the debtor and the wife could not have reasonably understood that embezzlement was within the scope of her actual authority. This case is clearly distinguishable as Heinz specifically empowered Taylor to contract with the Lioces on her

19

behalf, thus, Taylor was acting within both the scope of his employment to contract and with apparent authority as he was sent by Heinz to bid on the project.

The Court does recognize that at least one bankruptcy court in the Eleventh Circuit has questioned whether the Eleventh Circuit would apply the reckless indifference standard. In the case of *Agribank v. Gordon (In re Gordon),* 293 B.R. 817 (Bankr. M.D. Ga. 2003), the bankruptcy court found that the Eleventh Circuit did not clearly state in *Villa* whether an innocent debtor's liability for her agent's wrongdoing is nondischargeable under § 523(a)(2) regardless of the debtor's knowledge or participation in the fraud, or whether the Eleventh Circuit would apply the reckless standard, requiring the debtor knew or should have known of the agent's fraud in order to impute intent. Without concrete guidance, the bankruptcy court chose to apply the higher reckless indifference standard and held that "more than the mere existence of an agent-principal relationship is required to charge the agent's fraud to the principal."[29] However, the court explained that actual participation in the fraud by the principal is not required. "If the principal either knew or should have known of the agent's fraud, the agent's fraud will be imputed to the debtor–principal. When the principal is recklessly indifferent to his agent's acts, it can be inferred that the principal should have known of the fraud."[30]

First, this Court notes that *Gordon* is another case involving a marital relationship. The debtor was a farmer and his wife worked full time as a school teacher. The bankruptcy court held that the marital relationship that existed between the parties did not itself provide a sufficient basis for imputing fraud, given that the wife was not partners in her husband's farming operation, and that

---

[29]     *Agribank v. Gordon (Gordon)*, 293 B.R. 817, 826 (Bankr. M.D. Ga. 2003).

[30]     *Id.*

Case 13-80024-JAC    Doc 43    Filed 11/13/13    Entered 11/13/13 15:02:07    Desc Main
Document      Page 20 of 33

the wife had no reason to suspect that her husband of 27 years would materially misrepresent her income and assets on financial statements that he submitted to obtain farm loans.

Further, this Court is not as certain that the Eleventh Circuit would apply the reckless indifference standard, requiring that the debtor knew or should have known of the agent's fraud in order to impute intent. The Eleventh Circuit *Villa* court explained that the issue in *"Strang* was whether the debtors, *who had been unaware of their co-partner's fraud,* could nonetheless be precluded from discharging the debt in bankruptcy."[31] Although, the *Villa* court applied a narrow reading of *Strang*, *Villa* clearly recognized that actual fraud may be imputed to a debtor under agency principles pursuant to *Strang* for purposes of § 523(a)(2).

Nevertheless, under either standard the Court finds that the plaintiffs have proven by a preponderance of the evidence that Heinz knew or should have known of Taylor's fraudulent misrepresentations. Lioce testified that she spoke with Heinz on the telephone and that Heinz informed Lioce that she would send Taylor to the Lioces' home to give the Lioces an estimate. Lioce further testified that the debtor gave Lioce Taylor's credentials during the phone call. After meeting with Lioce, Taylor assured Lioce that Signature Landscapes would be able to obtain the permits needed to construct the covered porch attached to the Lioces' home and, further, that Signature Landscapes had the experience required to build the attached porch. The Court finds that it can be inferred that Taylor intended to deceive and to induce the Lioces into entering into contract with Signature Landscapes by falsely representing that Signature Landscapes was licensed, experienced, and capable of performing the work the Lioces needed. Instead, the scope of the project clearly exceeded Signature Landscapes capabilities as same required a building permit and,

---

[31]        *In re Villa,* 261 F.3d at 1151 (emphasis added).

21

thus, a general contractor's license which Signature Landscapes did not have. Nevertheless, Taylor was clearly acting within the scope of his employment to contract on behalf of Signature Landscapes and with the apparent authority bestowed upon him by Heinz.

Heinz testified that she turned the day-to-day operations of the business over to Taylor soon after she hired him. Thereafter, it appears that Heinz conducted very little oversight except to review receipts that crossed her desk the few hours a week she came into the office. Yet, Heinz knew that Taylor was contracting on behalf of Signature Landscapes as she had authorized and given him the authority to do so. Based on the forgoing, the Court finds that the debtor's action were recklessly indifferent which is evidence that the debtor knew or should have known of Taylor's fraudulent misrepresentations as her agent.

The Court further finds that Heinz made false representations with intent to deceive by prominently advertising that "[f]or you protection" Signature Landscapes is "licensed, bonded, and insured." Heinz argued at trial that she is licensed to install landscaping. However, the licensing statement appears on a page of website under "Foundation and Structural Renovation." Moreover, Heinz admitted that she was not insured on the date Signature Landscapes entered into the contract with the Lioces. Nevertheless, Heinz maintained false advertisements on Signature Landscapes' website when in fact her insurance coverage had lapsed.


**ii. Justifiable reliance**

In *Field v. Mans*, 516 U.S. 59 (1995), the Supreme Court determined that the applicable standard of reliance that a creditor must establish under § 523(a)(2)(A) is justifiable reliance rather than the rigid standard of reasonable reliance. In *Vann v. City Bank & Trust Co. (In re Vann)*, 67

F.3d 277, 283 (11ᵗʰ Cir. 1995), the Eleventh Circuit stated that under the justifiable reliance standard the "plaintiff's conduct must not be so utterly unreasonable, in the light of the information apparent to him, that the law may properly say that his loss is his own responsibility."  In *Vann* the bankruptcy court applied the reasonable reliance standard and concluded that the bank would have been better served by demanding an appraisal of certain property and should have made other inquiries of the debtor to ascertain the status of certain properties prior to closing the debtor's loan. The Eleventh Circuit cautioned that courts should not second guess a lender's decision to make a loan, stating:

> Although the bankruptcy court, with hindsight, can see plainly that the bank would have been 'better served by demanding an appraisal' and by making further inquiries of the debtor . . . . the court should not 'second guess a creditor's decision to make a loan' or 'base its decision regarding discharge on whether *it* would have extended the loan.'[32]

In this case, Heinz argues that if the Lioces were concerned as to whether Signature Landscapes or Heinz held a general contractor's license then plaintiffs could have easily Googled "Alabama General Contractors License" and then performed a license roster search under either name which would have revealed that neither held such license.  However, the Eleventh Circuit has recently explained that "[j]ustifiable reliance is gauged by an *individual standard* of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case. . . . it is only where, under the circumstances, the facts should be apparent to one of plaintiff's knowledge and intelligence from a

---

[32]  *Vann v. City Bank & Trust Co. (In re Vann)*, 67 F.3d 277, 283 (11ᵗʰ Cir. 1995).

23

cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own."[33]

In *Sears v. United States (In re Sears)*, 2013 WL 4426516 (11th Cir. 2013), the debtor, doing business as ABBA Bonding Company, issued several surety bonds for various government projects. After the debtor filed bankruptcy one of the government contractors for whom debtor was surety defaulted on his contract which triggered the debtor's obligations under the surety agreement. Because the debtor was already in bankruptcy, the government could not collect under the debtor's bond and was required to hire another contractor to finish the job at an additional cost of $1,055,724.10. The government filed an adversary proceeding challenging the dischargeability of this debt, arguing that the debtor induced it to accept him as surety using false pretenses, false representations, or actual fraud under § 523(a)(2)(A).

The debtor was required to submit an Affidavit of Individual Surety in which he pledged collateral to secure each bond. Each affidavit required the debtor to list the real estate pledged and attach supporting certified documents. On each affidavit the debtor listed various parcels of real estate. On some, but not all, he also attached a financial statement listing the net worth of ABBA Bonding as approximately $126 million. Debtor further indicated that there were no mortgages or liens on any of the pledged collateral. Each affidavit required the debtor to identify any bonds for which the pledged assets were pledged within the prior 3 years. Debtor responded "0."

The government approved ten bonds at issue, but later found out that: (1) the debtor did not own many of the properties pledged as collateral; (2) did not hold clear title to one of the properties;

---

[33]     *Sears v. United States (In re Sears)*, 2013 WL 4426516 *3 (11th Cir. 2013).

24

(3) debtor had pledged properties more than once for the various bond issues; and (4) the net worth of debtor's bonding company was substantially less than $126 million.

On the issue of reliance, the bankruptcy court reasoned that debtor's misrepresentations were not apparent to the contracting officers reviewing the affidavits because same were completely filled out and submitted under oath. Debtor argued that the government did not justifiably rely on same because he failed to attach required supporting documents to the affidavits and same were, therefore, facially incomplete.

The Eleventh Circuit found justifiable reliance where "it was not apparent from a 'cursory glance' at his affidavits that they were fraudulent."[34] Even though the debtor did not attach supporting documentation, he answered every question on each of the affidavits, and the affidavits were signed and notarized. Moreover, the court explained that the debtor's own failure to provide documents to support his fraudulent statements should not allow him to avoid his obligation to the party to whom he lied.

Here, the Court finds that Lioce was induced to sign the contract with Signature Landscapes in justifiable reliance upon false and fraudulent representations by Heinz's agent, that Signature Landscapes was licensed and capable of performing the work for which Signature Landscapes contracted and capable of obtaining the necessary building permits required to construct the addition to the Lioces' home; and further upon the false representations contained in advertisements that Signature Landscapes was licensed and insured. Under the circumstances, the Court finds that there was nothing which served as a warning to the Lioces that they were being deceived by either Justin

---

[34] *Sears* at *4.

Case 13-80024-JAC   Doc 43   Filed 11/13/13   Entered 11/13/13 15:02:07   Desc Main
Document      Page 25 of 33

Taylor or by Signature Landscapes' false advertisements; nor that they should further investigate any of the false representations made by same.

### iii. Damages

"For a debt to be nondischargeable under § 523(a)(2)(A), a creditor must show that it 'sustained a loss as a result of the misrepresentation.'[35] Here, Heinz admitted at trial that the covered porch Signature Landscapes partially constructed was structurally unsound. Heinz further testified that she was unable to hire a general contractor to complete the project because no general contractor would complete work that had been started by an unlicensed contractor. Instead, the entire structure had to be torn down and rebuilt by a licensed contractor. Lioce testified that she would not have hired Signature Landscapes without the representations of insurance and assurances that Signature Landscapes could obtain the required building permits. Accordingly, the Court finds that the plaintiffs have proven by a preponderance of the evidence that they sustained a loss a result of the misrepresentations made by Heinz's agent and by the misrepresentations contained in Signature Landscapes' website.

Based on the forgoing, the Court finds that the debt to the Lioces is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

### E. § 727(a)(3)

"A bankruptcy court will grant a debtor a discharge of a debt unless the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business

---

[35]     *Sears v. United States (In re Sears)*, 2013 WL 4426516, *5 (11th Cir. 2013).

transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."[36] Section 727(a)(3) "does not contain a fraudulent intent requirement."[37]

"Section § 727(a)(3) requires disclosure of all relevant records for the benefit of all creditors and the bankruptcy court."[38] The subsection ensures that the trustee and creditors will receive sufficient information to reconstruct the debtor's financial dealings and "confirm the debtor's financial condition and the cause of the debtor's financial difficulty."[39] The debtor has an affirmative duty to maintain comprehensible records from which his financial condition or business transactions can be ascertained with a fair degree of accuracy.[40] The burden is not on the trustee or creditors to organize and reconstruct the debtor's business affairs.

To justify denial of discharge under § 727(a)(3), the plaintiff must establish by a preponderance of the evidence that: (1) the debtor "either failed to keep or preserve any recorded information, or committed an act of destruction, mutilation, falsification, or concealment of any recorded information; and (2) that as a result of such failure or act, it is impossible to ascertain the financial condition and material business transactions of the debtor."[41]

---

[36]    *In re Rudolph*, 233 Fed.Appx. 885, 888 (11 th Cir.  2007).

[37]    *Protos v.  Silver (In re Protos)*, 322 Fed.  Appx.  930, *4 (11th Cir.  2009).

[38]    *Protos v.  Silver (In re Protos)*, 322 Fed.  Appx.  930, *4 (11th Cir.  2009).

[39]    *Buckeye Retirement Co.  v.  Bishop (In re Bishop)*, 420 B.R. 841, 849 (Bankr.  N.D. Ala. 2009).

[40]    *Goldberg v. Lawrence (In re Lawrence)*, 227 B.R. 907 (Bankr. S.D. Fla. 1998).

[41]    *Buckeye Retirement Co.  v.  Bishop (In re Bishop)*, 420 B.R. 841, 849 (Bankr.  N.D. Ala. 2009).

"The records which are required to determine a debtor's financial condition differ from case to case, with a sophisticated business debtor being held to a higher standard than an unsophisticated, uneducated debtor."[42]

Viewing the facts in the present case, the Court is satisfied that Heinz failed to keep adequate books and records from which her financial condition can be ascertained, and her failure to do so is not justified under the unique circumstances of this case. Heinz is a sophisticated businesswoman with a college degree in accounting. She has not only worked as an accountant, but she is also an entrepreneur who has owned at least two businesses, Universal Auto and her current business, Signature Landscapes. Moreover, Heinz recently held herself out as a public accountant on her personal web page which she created in anticipation of reviving her accounting career. Heinz also created a Facebook page and a LinkedIn account offering accounting services. Her LinkedIn account states that she is an entrepreneur, public accountant, and QuickBooks Advisor. Heinz stated on her LinkedIn account that she has "over 21 years experience in Accounting and running a small business;" and further states that she specializes in "[s]mall business accounting," and "Quickbooks set up, coaching, and support."[43] Nevertheless, Heinz failed to preserve accounting records from 2009 through 2011 electronically stored on Quickbooks. Moreover, a majority of the backup documentation for these years was lost around the same time that the electronic information was destroyed. Both the electronic information and paper documentation was lost or destroyed less than one month after the sheriff's office came to Signature Landscapes on September 27, 2012 to execute on the Lioces' judgment, less than one month after Heinz filed for bankruptcy on September 28,

---

[42]     *Buckeye Retirement Co. v. Bishop (In re Bishop)*, 420 B.R. 850 (Bankr. N.D. Ala. 2009).

[43]     Plaintiffs' Ex. 18.

28

2012; and only days after the Lioces contested the extension of the debtor's automatic stay in this case.

Heinz admits that the electronic information from 2009 through 2011 was destroyed after she filed bankruptcy and that she subsequently lost two or three boxes of financial records related to the same years. However, Heinz argues that the plaintiffs have failed to establish that it is impossible to ascertain the debtor's financial condition as a result of the loss and destruction because the debtor has sufficient documentation to provide to the IRS were she audited for the tax years 2010, 2011, or 2012 using her bank statements. However, the Court believes that it is impossible to completely and accurately develop the full picture of Heinz financial condition during the relevant time period without the electronic or paper documentation for the relevant time periods. The Court further finds the debtor's credibility severely lacking given the timing surrounding loss and destruction of documents in this case as same occurred after the commencement of the case and after the Lioces' objected to the extension of the debtor's automatic stay, and further based on debtor's failure to disclose the existence of the thumb drive she used to backup her electronically stored information. Accordingly, the Court finds that the plaintiffs have proven by a preponderance of the evidence that Heinz failed to keep or preserve recorded information, and that as a result of such failure, it is impossible to ascertain the financial condition and material business transactions of the debtor.

## F.   § 727(a)(4)(A)

The Lioces assert that the debtor knowingly and fraudulently made numerous false oaths or accounts in or in connection with the case within the meaning of § 727(a)(4)(A). "'Courts will not grant a discharge if the debtor knowingly and fraudulently, in connection with the case, made a false

oath or account.'"[44]  "To justify denial of discharge under § 727(a)(4)(A), the false oath must be fraudulent and material."[45] "'Deliberate omissions by the debtor may also result in the denial of a discharge.' False oaths regarding worthless assets can still bar discharge of debts."[46]  "Discharge may not be denied where the untruth was the result of mistake or inadvertence. 'Rather, the false oath must be made intentionally with regard to a matter material to the case.'"[47]

To prevail on an objection to discharge for false oath or account pursuant to § 727(a)(4)(A), the Lioces must establish that:

1.      Heinz made a false statement under oath;

2.      Heinz made the statement knowingly and with fraudulent intent; and

3.      the statement was material to the bankruptcy case.[48]

First, the Court finds that the debtor made numerous false oaths in connection with the case. In particular, the Court finds that Heinz's schedules contain the following omissions and inaccuracies: (1) On Schedule B - Heinz listed checking accounts totaling $1,350 when in reality the accounts held approximately $4,787.74; (2) Heinz failed to amend her schedules when she converted from Chapter 13 to Chapter 7 to disclose that the ledger balance in her PNC checking account was $18,486; (3) On Schedule I - Heinz reported regular income of $1,299 per month from

[44]      *Keefe v.  Rudolph (In re Rudolph)*, 233 Fed. Appx. 885, 889 (11th Cir. 2007).

[45]      *Keefe v.  Rudolph (In re Rudolph)*, 233 Fed. Appx. 885, 889 (11th Cir. 2007)(*quoting Swicegood v. Ginn,* 924 F.2d 230, 232 (11th Cir.1991)).

[46]      *Keefe v.  Rudolph (In re Rudolph)*, 233 Fed. Appx. 885, 889 (11th Cir. 2007)(*quoting Chalik v.  Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir.  1984)).

[47]      *Keefe v.  Rudolph (In re Rudolph)*, 233 Fed. Appx. 885, 889 (11th Cir. 2007)(*quoting In re Cutignola*, 87 B.R. 702, 706 (Bankr.  M.D. Fla.  1998)).

[48]      *Protos v.  Silver (In re Protos)*, 322 Fed.  Appx. 930 (11th Cir.  2009); *Swicegood v.  Ginn,* 924 F.2d 230, 232 (11th Cir.  1991).

the operation of business, but Heinz admitted at trial that she did not calculate this number using gross business income for the preceding 12 month period – instead, debtor used figures from 2011, however, those figures were inaccurate as well; (4) On Heinz's SOFA, debtor substantially under reported gross income from the operation of her business for the tax years 2010 through 2012; (5) Heinz failed to disclose  transfers to both her husband and son in response to question 3 in the SOFA; (6) Heinz failed to disclose the address of her current residence; and (7) Heinz failed to disclose additional income generated from the operation of a U-Haul business in connection with Signature Landscapes.

Next, the Court must decide whether Heinz made these false oaths knowingly and with fraudulent intent.  "Because debtors generally will not testify as to their own misconduct," the Eleventh Circuit has recognized that the element of intent under § 727(a)(4)(A) "is generally proven by circumstantial evidence or inferences drawn from circumstances surrounding the debtor."[49]

Heinz attempts to explain away each false statement as having been merely inadvertent, however, the Eleventh Circuit has recognized that "[w]hile a single, isolated instance of non-disclosure or improper disclosure *may* not support a finding of fraudulent intent," the repeated nature of such non-disclosures or improper disclosure will support a finding of fraudulent intent under the unique circumstances of a given case.[50]  Upon the evidence presented, it is the opinion of this Court that debtor intentionally made false oaths in connection with this case pursuant to section 727(a)(4)(A). As set out above, Heinz made numerous omissions and improper disclosures in her bankruptcy schedules regarding funds held her in checking accounts, gross income, payments to

---

[49]     *Phillips v.  Epic Aviation (In re Phillips)*, 476 Fed.  Appx.  813, 816 (11th Cir.  2012).

[50]     *Protos v.  Silver (In re Protos)*, 322 Fed.  Appx. 930, 933 (11th Cir.  2009) .

31

insiders, and additional business income. While none of these omissions or improper disclosures alone may have supported a finding of fraudulent intent, the Court finds that the repeated pattern of omissions and disclosures does support such finding. The Court is very mindful that this is not the debtor's first bankruptcy filing. Indeed, the debtor has filed five petitions which have resulted in two Chapter 7 discharges, one Chapter 11 confirmation order, and one case dismissed for failure to make payments. Given the debtor's familiarity with the bankruptcy process, the Court simply finds it difficult to believe that each of the omissions and improper disclosures were inadvertently made. Further, the Court is mindful that Heinz is a sophisticated business woman who holds a college degree in accounting. Indeed in the year leading up to filing her current petition, Heinz held herself out as a public accountant with "over 21 years experience in Accounting and running a small business;" and further stated that she specializes in "[s]mall business accounting," and "Quickbooks set up, coaching, and support."[51] The Eleventh Circuit has recognized that a person's education and sophistication is a factor to be considered when determining intent or reliance.[52] Under the circumstances of this case given the numerous omissions and improper disclosures, debtor's familiarity with the bankruptcy process, the debtor's education as an accountant, business experience and after having the opportunity to examine the debtor's credibility on the witness stand, the Court finds that Heinz made the false oaths and statements knowingly and with fraudulent intent.

---

[51]     Plaintiffs' Ex. 18.

[52]     *Phillips v. Silver (In re Phillips)*, 476 Fed. Appx. 813 (11th Cir. 2012)(finding debtor knowingly and fraudulently disregarded his interest and disclosure obligations where debtor was a sophisticated and education businessperson); *AAFCOR, LLC v. Frank Spires, Spires & Assocs. (In re Shelton)*, 481 Fed. Appx. 520 (11th Cir. 2012)(finding sophisticated lender relied on its independent investigation into debtor's assets); *Davenport v. Frontier Bank (In re Davenport)*, 508 Fed. Appx. 937 (11th Cir. 2013)(finding bank reasonably relied on materially false financial statement given debtor's education, training and experience as a CPA).

32

Finally, when determining whether a false oath will bar a debtor's discharge, the test for materiality is whether the false statement was related to the debtor's business transactions or estate, or concerned the discovery of assets, business dealings, or existence and disposition of debtor's property.[53] In the instant case, each of the above false oaths unquestionably related to the debtors business and bankruptcy estate. Therefore, the final element of section 727(a)(4)(A) is satisfied. Accordingly, the debtor's discharge is also due to be denied under section 727(a)(4)(A).

A separate order will be entered consistent with this opinion.

Done and Ordered this day November 13, 2013

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

---

[53]     *Chalik v. Moorefield,* 748 F.2d 616 (11th Cir.1984); *Phillips v. Silver (In re Phillips),* 476 Fed. Appx. 813, 819 (11th Cir. 2012).

33